## Wm. Wade et al., Appellants, v. Oakmont Borough et al.

*Boroughs—Municipal indebtedness—Division of boroughs—Special tax
—Decree nunc pro tunc—Acts of April 20, 1874, and June 1, 1887.*

Under the act of June 1, 1887, P. L. 285, relating to division of boroughs, a special tax by the new borough to meet a part of the indebtedness of the old borough, must be preceded by the decree of the court. . The court of quarter sessions must define to what extent and within what limits that special power shall be exercised.   Until the court has made such a decree, the borough councils cannot act.

Where the court in the decree incorporating the new borough has failed to authorize a tax for the payment of a part of the debt of the old borough, and the councils of the new borough subsequently pass an ordinance providing for such a tax, the court of quarter sessions may amend its decree nunc pro tunc, and thus legalize the ordinance.

An annual sum to be paid monthly for lighting the streets of a borough for a limited term is not the incurring of a new indebtedness within the meaning of the constitution, or of the act of April 20, 1874, P. L. 65.

If the contracts and engagements of municipal corporations do not overreach their current revenues, no objections can be lawfully made to them, however great the indebtedness of such municipality may be, for in such case their engagements do not extend beyond their present means of payment, and so no debt is created.

Argued Oct. 26, 1894.   Appeal, No. 151, Oct. T., 1894, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1894, No. 10, on bill in equity.   Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed with modification of decree.

Bill by taxpayers to restrain collection of tax.   Before EWING, P. J.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were the findings (1) that the levy of the three mill tax was legal; (2) that the constitutional limit of indebtedness was not exceeded by such levy ; (3, 4) dismissal of bill as to all other matters except restraining defendants from using the three mill tax for any other purpose than payment of principal and interest of bonded indebtedness.

*J. M. Hunter, C. C. Dickey, R. B. Ivory* and *J. A. Beatty* with him, for appellants.—When the new borough's necessities

required additional revenues to meet its share of the old bor-
ough's indebtedness, its officials were bound to show some lawful
authority justifying the imposition of a levy to raise the same.

Statutes delegating to municipalities and other inferior
authorities the power of imposing taxation must be in clear and
unambiguous terms, and are subject to the rule of strict con-
struction: Endlich, Stat. 490.

If the contracts and engagements of municipal corporations
do not overreach their current revenues, no objections can law-
fully be made to them, however great the indebtedness of such
municipality may be, for in such case their engagements do not
extend beyond their present means of payment, and so no debt
is created: Erie City's Ap., 91 Pa. 403.

As a portion of this contract liability was not within the cur-
rent revenues of the borough, the whole is invalid: Millers-
town v. Frederick, 114 Pa. 441; Filson's Trustees v. Himes, 5
Pa. 452.

Where a statute inflicts a penalty for the doing of an act, it
implies a prohibition; and a contract in violation of it cannot
be enforced: Mitchell v. Smith, 1 Bin. 110; Thorne v. Ins.
Co., 80 Pa. 28; Johnson v. Hulings, 103 Pa. 498.

When an act or contract is prohibited under a penalty, such
act or contract is void, although the statute imposing the pen-
alty does not expressly so declare: Atherton v. City, 3 Kulp,
402; Burkholder v. Beetem, 65 Pa. 505; Fowler v. Scully, 72
Pa. 467; Holt v. Green, 73 Pa. 201; Connor's Ap., 103 Pa.
356.

If a discretion conferred is abused, the power of a court of
equity would be adequate to restrain any perpetration of a pal-
pable wrong: Erie v. Reed, 113 Pa. 476; Harper's Ap., 109
Pa. 10.

*J. P. Hunter*, for appellee.—The act of 1874 is an enabling
act, and does not simply prescribe a mode of exercising powers
theretofore given.

As the act of 1874 authorizes such increase of indebtedness
and clearly repeals the limitation of one per cent imposed by
the act of 1851, it might well be contended that this, by impli-
cation, carried with it the full power to levy such tax as was
necessary to discharge such obligations; Dill. Mun. Corp., 4th

ed. 741, 747, note 2; Com. v. Hamilton, 34 Pa. 523; Com. v. Comrs. of Allegheny, 40 Pa. 348; Wilkes-Barre City's Ap., 116 Pa. 246; Howard's Ap., 162 Pa. 374.

If appellants are aggrieved by the act of councils in levying this tax of three mills, then they had the right of appeal to the quarter sessions, by which such action could be reviewed; and this statutory remedy being provided, they were bound to follow it: Stump's Ap., 38 Leg. Int. 205; Chartier Boro.'s Ap., 19 W. N. 46; Smith v. School Dist., 4 Law Times (N. S.) 12; Dill. Mun. Corp. 894.

Among the general powers conferred upon municipal authorities by the act of April 3, 1851, to enact such laws as "they deem necessary for the good order and government of the borough," is the authority "to establish a nightly watch, to light the streets," etc. As therefore the power is given "to light the streets," and no limitation is placed upon the manner of their so doing, the borough can "light the streets" either by the erection of its own plant necessary for that purpose, or the procuring of the lighting to be done by others: Haupt's Ap., 125 Pa. 211; Hower's Ap., 127 Pa. 134; Williamsport v. Com., 84 Pa. 501; Galena v. Corwith, 48 Ill. 423.

In all cases where the courts have held that a debt incurred or contract entered into was invalid on account of the failure of the municipality to make an antecedent appropriation, there was special legislative provision that such antecedent appropriation must be made prior to the incurring of such debt, or the making of such contract: Perrot v. City, 83 Pa. 49; Parker v. City, 92 Pa. 402.

The rental to be paid for the light being for one of the ordinary expenses of the municipality, and being within the current revenues of the borough as derived from the tax authorized to be levied for "borough purposes" and other sources except said three mill tax, is not the incurring of an indebtedness, and it is within the power of the council to authorize such expenditure: Dill. Mun. Corp. § 136; Grant v. Davenport, 36 Iowa, 396; East St. Louis v. Gas Co., 98 Ill. 415; Valparaiso v. Gardner, 97 Ind. 1; Atlantic City Water Works v. City, 39 N. J. Eq. 373; Erie's Ap., 91 Pa. 403; Lehigh Coal & Nav. Co.'s Ap., 112 Pa. 368: Hower's Ap., 127 Pa. 134.

The latter part of § 2 of the act of 1874 relates, not to every

debt which is authorized to be incurred, but to the borrowing of money, and every such debt is not invalid because of the failure to levy a special tax for the payment thereof, and more especially where it is proposed to pay the same out of the general tax, which has already been levied : Lehigh Coal Co.'s Ap., 112 Pa. 368 ; Hower's Ap., 127 Pa. 134.

The failure to levy such tax and file such statement does not render invalid the debt created, if within the maximum of two per centum : Boro. v. Fyan, 127 Pa. 74.

OPINION BY MR. JUSTICE DEAN, Jan. 7, 1895 :

By a decree of the Court of Quarter Sessions of Allegheny county, on March 4th, 1889, defendant was created a municipality by the name of Borough of Oakmont. The greater part of its territory came off the borough of Verona, and the proceedings to constitute the new one were had under act of June 1st, 1887. The municipal indebtedness of the old borough was $23,376.75, and under the same act, the proportion of this, fixed as that of the new borough, was $13,680. This was specifically determined by the decree of incorporation. The rate of interest on this debt, and date of payment of interest and principal, were of course settled by the contract of the old borough, with its creditors, when the debt was created ; therefore, these matters were beyond the reach of either the new borough or the court. But no direction was given the new borough as to levying a special tax, as the act authorizes, to pay the interest of this debt, or discharge the principal as it matured. Oakmont's proportion of the interest and principal, has, up to the date of this proceeding, been met out of the annual taxes levied under the general borough act of 3d of April, 1851. In 1893, the borough council of Oakmont, believing the lighting of the streets by natural gas insufficient for the needs of the citizens, determined to introduce electric lights, and accordingly passed an ordinance authorizing the burgess to contract with the Oakmont & Verona Heat, Light and Power Company, to furnish such light. The burgess was authorized to contract for twenty lights at the price of $80 per light, $1,600 annually, payable monthly for a term of seven years, and the contract was made.

Although the adoption of the ordinance was in July, the

new step had been practically resolved upon more than a month before; so, at a meeting of council, 2d of June, 1893, provision was made to meet by taxation the current expenses and obligations, including this one.   The assessed valuation of the borough was $1,135,655.   A tax of five mills was levied for borough purposes, and, in addition, a special tax of three mills; of this last, $1,180.95 was appropriated to meet debt and interest of the apportioned part of the Verona borough indebtedness, falling due in spring of 1894, and the balance, $2,254, to contingencies.   The five mill tax, by computation, produced the sum of $5,725; $3,615 of this was appropriated for borough purposes, and the balance, $2,110, for contingencies; making altogether for contingent expenses, the large sum, relatively, to borough expenses, of $4,364.   It was out of this contingent fund, that it was intended to provide for the light contract authorized by ordinance on 31st of July following.

On October 3d, 1893, plaintiffs filed this bill, averring the foregoing facts, and concluding therefrom : 1. That there was no authority in law for the levy of the three mill tax, amounting to $3,435, because, in the decree incorporating the borough, and apportioning the debt of Verona borough, no order was made by the court for the levy of a special tax under the act of 1887 to meet that part imposed on the new borough. 2. That the sum raised by the three mill tax, even if authorized, was largely in excess of any sum required for the annual payment of interest and the fraction of maturing principal, and was therefore illegal.   3. That the amount specified to meet " contingencies " is largely in excess of any requirements for current purposes, and therefore, to the extent of such excess, is illegal.   4. That the purpose of setting aside so large an amount for contingencies, was to provide means to fulfill the contemplated contract for the electric light; that this was not an antecedent appropriation for a specific debt, nor a specific tax for a special purpose ; that such contract being the creation of a debt to a large amount, for a particular purpose, it could not be provided for by a contingent fund, which last could only be authorized for uncertain incidental expenses of the borough, that could not reasonably be foreseen.   Therefore, the levy of a special tax, for these reasons, was unlawful. 5. That a contract by the council of the borough for electric light, without the approval of the voters, is ultra vires.

Afterwards the bill was amended so as to aver that the indebtedness of the borough, at the date of the ordinance, was $10,023.96; that the aggregate debt for the electric light, seven years at $1,600 per year, would amount to $11,200. That this added to the debt then existing, would make the whole debt largely in excess of that allowed by law, unless concurred in by a vote of the electors of the borough, which was not had thereon; therefore, for that reason, was illegal.

The prayer was for an injunction restraining the collector from collecting the three mill tax, the council from proceeding to carry out the contract, that the ordinance authorizing the same be declared void, and that the borough be ordered to refund the amount of tax, where already collected.

The facts as averred in the bill were, in substance, admitted by the defendant; the inferences sought to be drawn from them, and all the conclusions of law, that the ordinances of 2d of June and 31st of July 1893 were illegal and void, were denied.   The case was set down for argument on bill and answer.

The court below found that the levy of the three mill tax, to meet the interest and principal of Oakmont's share of the Verona borough debt, was necessary and proper under the circumstances, and was legal.   That the contract with the Light, Heat & Power Company was within the scope of the powers granted boroughs by the act of 1851, " to light the streets," and was wholly within the discretion of councils.   That the $1,600 per year for seven years for the light, was not a new indebtedness within the meaning of article 9, sec. 8, of the constitution, or of the 2d section of act of assembly of 1874, but was only a part of the current expenses of the borough from year to year.   Further, that even if this tax were, within the meaning of the constitution and act of 1874, a new indebtedness, it would not, when added to the previous indebtedness, equal two per cent of the assessed valuation, and therefore, under the decision in borough of Rainsburg v. Fyan, 127 Pa. 74, it was not necessary to file a statement in the office of the clerk of the quarter sessions before incurring the debt.   That the placing of a part of the proceeds of the three mill tax in the appropriation for contingencies, was improper and illegal, and the borough should be restrained from applying any part

of this to payment of other than the interest and bonded indebtedness. Accordingly, as to this last conclusion the borough was restrained from making any other use of the three mill tax, but as to all other complaints, the bill was dismissed.

From this decree the plaintiff appeals, alleging error in finding: 1. That the levy of the three mill tax was legal. 2. In finding that the constitutional limit of indebtedness was not exceeded by such levy.

Other errors embraced in the 3d and 4th general assignments are brought to our attention in the argument, but it seems to us the case turns upon the first two.

The payment of the interest and part of the principal annually of the bonded debt, was not voluntarily assumed by virtue of any corporate action of the new borough; it was born with this burden, and there was no escape from it, when it chose to adopt an independent existence. It was incorporated under the act of 1887, the first section of which provides: "It shall be the duty of the court, before entering the decree, to appoint an auditor who shall ascertain the existing liabilities . . . . and shall report the same to the said court, with the form of a decree adjusting the liabilities for all indebtedness." The auditor was appointed, and made report that, March 4th, 1889, the date of the decree, the total indebtedness of Verona borough was $23,376.75, and that this should be adjusted by imposing upon Oakmont 58.82 per cent, or $13,680.08. And this adjustment was settled by the decree then made. It was a somewhat large indebtedness for a new borough to start with; one with an assessed valuation at that date of about one million dollars. In addition to the interest on the whole, and the installments of the principal, $1,000 falling due on the 1st of May each year, the new borough must make provision for the expenses of a new municipal organization, and the annual current expenses. If it had not started in life with a heavy debt, annual payments on which, from the very nature of the contract, admitted of no postponement, the new organization might very well have been left to take care of itself, without peremptory directions as to its duty concerning the bonded debt, from the court. Or, if the debt had been insignificant in amount, the court could have assumed, it might easily be discharged from the ordinary annual revenues. But the legislature knew very well that, as to such a debt, the

contract with the original bondholder must not be violated, no matter into how many fractions the original municipality might be severed; so the same section of the act of 1887 enacts that the court " may order and direct a special tax to be levied upon the property . . . . so detached from said borough, for the payment of so much of the indebtedness as may be awarded against it, and direct how the same shall be assessed and collected." Obviously, the legislature intended that if, by the adjustment of the indebtedness of the two boroughs, there was any considerable burden imposed upon the new, the court should, by proper decree at the date of the incorporation, fix the rate of tax to be levied to meet it. Until that be done, no certain provision is made for responding to the legal demand which the old borough may make upon it; while the creditor's obligation of the old borough fixes his legal demand upon it. We do not think, in view of the facts here, the court of quarter sessions in 1889 made as full a decree as the law and facts warranted; and therefore, the authority to councils to levy a special three mill tax was wanting. This was doubtless the neglect of counsel in framing the decree. Without this direction, however, any payments made on the indebtedness would have to be made out of the fund raised by taxation for general purposes. A special tax to meet a part of the indebtedness of the old borough, must be preceded by the decree of the court. There is no authority in councils to carry out that part of the act, without such decree. The court of quarter sessions must define to what extent, and within what limits, that special power shall be exercised. Statutes delegating the taxing power are always strictly construed.

It may be conceded, as is argued by appellee, that the act of 1874 was an enabling act, and enlarged the limit of taxation prescribed by the act of 1851. But this is not to the point; the exercise of the power to accomplish the particular end sought here, must follow the method pointed out by the act of 1887. The attempt is, in addition to the tax for current expenses, to levy a special tax for a special purpose. The debt was created by Verona borough, under the act of 1874; part of it became a debt of Oakmont, not by contract with it as a municipal organization, under the act of 1874, but by reason of a legal obligation to pay under the operation of the act of 1887

Being subject generally as a borough to the act of 1874, it may, by agreement with the old borough, and by the consent of creditors, take up the Verona bonds, and issue them as an obligation of its own; then provision for the interest and principal can be made, under the act of 1874. But as it stands it is a debt of a special character created by the act of 1887, and if paid under the provisions of that act by a special tax, the method pointed out by that act must be followed. The suggestion that the decree was not made because not necessary, is negatived by the fact that the special tax was laid, and councils, in their answer to plaintiff's bill, aver it was necessary.

The attitude of the parties to this contention, suggests to our minds that it would never have arisen if this decree had been comprehensive enough, when made, to have included the power to councils to levy a special tax to meet Oakmont's share of the old indebtedness. So far as since the organization such tax has been levied, collected and paid in discharge of the indebtedness, without decree, the borough having paid only what was justly owing, as the court would have decreed, neither, it nor its officers can be disturbed by future complaints or litigation on part of taxpayers. As to the tax now in dispute, levied in June 1893, the court of quarter sessions can amend its decree nunc pro tunc; can date the amendment to take effect as of the 4th March, 1889, and thus legalize the ordinance of 2d of June, 1893. Especially should this be done, when the court of common pleas, after full hearing, has found that this special tax was a reasonable and proper levy under the circumstances.

As to the argument that the rate and amount of tax were excessive, that may be, but it is not manifestly true. As the money raised cannot, under the decree of the common pleas, be used for any purpose other than for the payment of interest and principal on the bonded indebtedness, no serious injury can result to the taxpayers from its collection.

The averment that, by the contract for the electric light, the indebtedness will exceed two per cent of the last assessed valuation of the property of the borough, it is unnecessary for us to follow the close computations of counsel for appellant, which, as he argues, demonstrate that the indebtedness incurred by the electric light contract is extravagant, and exceeds the consti-

tutional limit two or three hundred dollars.    It was within the
discretion of the council to procure a better light for their streets,
and pay for the same such price as in their judgment was rea-
sonable.   We cannot review that discretion.   Their action is that
of the people of the borough, for they are their representatives.
It was done in good faith to promote the comfort and conven-
ience of the citizens, for they so aver in their answer, and there
is no denial.   An annual sum to be paid monthly for lighting
the streets for a limited term, is not the incurring of a new
indebtedness within the meaning of the constitution, or of the
act of 1874; and there is no evidence that this contract was
framed to evade the inhibitions of either.   The borough binds
itself to pay $133.33 per month for lighting the streets.   This
was a current expense, the same as if it had rented a council
chamber for a fixed term of years, at a monthly rental.   The
amount of the annual payment to be made in monthly install-
ments was clearly within the ability of the city to pay from its
current revenues, if special provision be made for the bonded
debt, as already indicated.

Therefore it was not, in any reasonable sense of the words as
used in the constitution, the incurring of an indebtedness to the
amount of the aggregate monthly installments for the seven
years.   And therefore, under the authority of the City of Erie's
Appeal, 91 Pa. 403, the contract is not forbidden.   That case
is here cited as authority by counsel on both sides, and decides:
" If the contracts and engagements of municipal corporations
do not overreach their current revenues, no objections can be
lawfully made to them, however great the indebtedness of such
municipality may be, for in such case, their engagements do not
extend beyond their present means of payment, and so no debt
is created."

There is nothing of merit in the remaining assignments.

The decree of the court below is affirmed, except in this par-
ticular : It is directed that an injunction issue from said court
restraining defendants from proceeding to collect the three mill
tax levied by ordinance of June 2d, 1893, for the purpose of
liquidating the maturing interest and principal of the bonded
indebtedness of said borough, until, by amendment or supple-
ment to its decree of 4th of March, 1889, the Court of Quarter
Sessions of the County of Allegheny doth order and direct a
special tax to be levied upon the property of the borough of

Oakmont, detached from the borough of Verona, for the payment of so much of the indebtedness of the borough of Verona, as was awarded against the borough of Oakmont, and doth direct how the same shall be assessed and collected. Further, when the certificate of the court of quarter sessions is filed in the court of common pleas showing that the decree of said court of the 4th of March, 1889, has been amended as herein indicated, then the injunction shall be forthwith dissolved.