# Addyston Pipe and Steel Company *v.* City of Corry.

*Municipal contracts—Increase of debt.*

The validity of a municipal contract in so far as it relates to an increase of the municipal debt beyond the constitutional restriction, must be determined as of the time it was made.

*Municipalities—Increase of debt—Current expenditure.*

There is no constitutional restriction on municipal expenditure provided it is paid as it goes.   What is prohibited is the incurring of debt.   If the city has the money on hand, or provides at the time a present means of raising it otherwise than by loan, it may contract for expenditure without restriction.

If means are adopted which in good faith according to reasonable expectation will produce a sufficient fund, the contract entered into on the faith of them should not be held unlawful on account of an unintentional miscalculation or an accidental and unexpected failure to produce the full result.

If a city at the time of making a contract levies a special tax in good faith supposed to be adequate to meet it, but in consequence of fire or flood, or decline in values, the result is an insufficient fund, it cannot be held that the contract, good at its inception, would thereby be made bad.

Where a city provides that the contract price of a sewer shall be paid partly by money in the treasury, and partly by assessments on abutting and nonabutting property, and subsequently it is found that the nonabutting property is not liable to said assessments, the loss must fall upon the city although at the time when the contract was made, the obligation of the city to pay for the nonabutting properties increased the debt beyond the constitutional limitation.

The constitutional restriction was not intended to make municipalities dishonest nor to prevent those who contract with them from collecting their just claims, but to check rash expenditure on credit and to prevent loading the future with the results of present inconsiderate extravagance.

Argued April 23, 1900.   Appeal, No. 358, Jan. T., 1899, by plaintiff, from judgment of C. P. Erie Co., Feb. T., 1899, No. 114, on case stated in the case of Addyston Pipe and Steel Co. v. City of Corry.   Before GREEN, C. J., MITCHELL, FELL, BROWN and MESTREZAT, JJ.   Reversed.

Case stated to determine liability of the city of Corry to pay the balance due on a contract for building a sewer.

The case stated was as follows:

1. That on September 13, 1891, the said city of Corry en-

tered into a contract with William J. Dunn for the construction of a main public sewer in the said city.

2. That in pursuance with said contract, the said William J. Dunn did construct the sewer as therein provided, which said sewer was finally completed and put into general public use in said city during the year 1895.

3. That the said contract was entered into in pursuance with an ordinance of said city.

4. That the total contract price of said sewer amounts to $57,696.02, that being the amount actually called for to be paid by the said city by the terms of the said contract.

5. That on September 30, 1891, the date of the contract aforesaid, the total assessed valuation of the said city of Corry was $1,359,096, the total indebtedness of the said city at that time being $122,300, and being in excess of the constitutional limitation; but, that at the present time, the time of bringing this suit, and since April, 1898, the valuation of said city is $1,685,077, and the total indebtedness is $98,000 being within the constitutional limit, and if judgment is entered for plaintiff in this case for claim, it will be within said limit.

6. The people of said city never at any time, or in any manner, by vote or otherwise, consented that the indebtedness of said city be increased.

7. That to provide for the payment of the said sum of $57,696.02, required by the contract aforesaid, the council of the said city caused to be presented to the court of common pleas of Erie county, a petition asking for the appointment of viewers to assess the cost of said sewer upon the property benefited, under and in accordance with the provisions of the act of assembly approved May 16, 1891, P. L. 75.

8. That in accordance with said petition viewers were appointed who assessed upon property in the said city the sum of $51,358.41, and upon the municipality a sufficient sum to equal in the aggregate the estimated cost of the improvement.    That of said assessment, the sum of $30,000, or about that sum, was assessed upon property abutting upon the line of said improvement, and the sum of $22,000, or about that sum, was assessed upon property not abutting on the line of said improvement.

9. After the confirmation of the report of the viewers by the court aforesaid, the said city appropriated for main sewer pur-

poses the sum total of the said assessments against all the property aforesaid, together with such sum from the general revenues of the said city as would equal in appropriation the contract price of the said sewer.

10. No separate, special or specific tax was ever levied by the said city for the amount it so appropriated from the general revenues.

11. Within six months from the final confirmation of the viewers' report, the city of Corry entered liens for all assessments remaining unpaid against abutting and nonabutting property.

12. That from time to time the said city issued city orders, or warrants, payable out of the main sewer fund appropriated as aforesaid, and payable to William J. Dunn, for the amount due him upon his said contract for the construction of the said sewer.

13. Among the orders or city warrants so issued, there were those numbered as follows: Nos. 2230, 2458, 2459, 2460, 3141, 3142, 3143, 3144, 3145, 3146, 3147, 3148, aggregating the sum of $6,000, which warrants were presented for payment on or about the date of their respective issue, and payment refused for lack of funds.

14. That in the course of business, and for a valuable consideration, the said orders or warrants were thereafter transferred by said Dunn to the Addyston Pipe Company, plaintiff in this case, which company is the legal owner of the same, and have been for some time.

15. That at the time said warrants were issued, there was not in the treasury to the credit of the said main sewer fund, an amount sufficient for their payment, but since that time a much larger sum has been received and paid out on account thereof, and since the bringing of this suit like warrants have been paid out of said main sewer fund without suit brought.

16. That after the receipt of said orders said plaintiff presented them to the treasurer of the city of Corry for payment, at which time of presentation there was not sufficient money in the said main sewer fund for their payment.   Payment was therefore refused, and the said orders or warrants now in the hands of the said Addyston Pipe Company remain yet unpaid, having never been presented but once.

17. That there has been placed in the main sewer fund and applied to the payment of main sewer orders from the general revenues of said city, all sums so appropriated.

18. That there has been collected by the said city of Corry from the said sewer assessments about the sum of $45,538, which sum has been applied to the payment of main sewer orders or warrants, given to the said William J. Dunn, none of which payments, however, have been made or applied to the said warrants or orders now held by the Addyston Pipe and Steel Company.

19. That upon July 18, 1895, the Supreme Court of Pennsylvania, in the case of Park Avenue Sewer, 169 Pa. 433, decided that assessments levied against property not abutting upon the line of improvement for the cost of which the assessments were made, were illegal.   Following such decision the said city of Corry entered into a test case in the nature of a case stated between the said city of Corry, plaintiff, and a piece of land assessed for the cost of said city main sewer, and not abutting upon the line thereof,—Mrs. C. P. Rogers, owner or reputed owner,—for the purpose of determining the right of the city to collect all assessments for the cost of constructing said sewer levied against nonabutting property and remaining unpaid, in pursuance of an agreement between the city and council for all nonabutting property owners.   That said case was argued before HENDERSON, J., specially presiding, who rendered a decision striking off the lien and holding all assessments levied for the cost of said sewer against nonabutting property void and uncollectible.   That thereafter, the said city presented its petition to this court, setting forth the facts recited in the last paragraph, and praying for the appointment of viewers to reassess the uncollected and uncollectible assessments theretofore levied against nonabutting property, said petition being presented in pursuance with the act of June 4, 1897, which petition was dismissed from this court for the reason that no power existed to in any way charge property nonabutting on said sewer with the cost thereof.   All of which more fully appears in the record of the said case which is hereby referred to and made a part thereof.

20. After the decisions aforesaid no further assessments levied off the line of the said main sewer were paid, nor did

the city make further effort to collect the same, and the liens entered therefor have expired prior to the bringing of this suit, and after the decisions aforesaid.

21. All of the assessments levied against abutting property by the said city have been collected and applied as aforesaid.

22. There remain unpaid assessments amounting to about $6,000, all of which were levied against nonabutting property.

23. There are not now, nor will there be hereafter, any funds in the treasury of the said city to the credit of the main sewer fund and there does not now remain, and there will not hereafter be received by the said city any money from any of the main sewer assessments.

24. That after the issuing of said orders by the city, transfer of same to plaintiff and demand made for payment, a large amount of money, viz: more than $10,000, was paid into the city treasury on account of said sewer assessments, and has been paid out to sundry holders, not prorating, but in full, some of which were so paid out since the bringing of this suit, to holders, they not having entered suit.

25. The only ordinance or resolution relating to the payment of interest on said orders are attached hereto, made part hereof and marked exhibit "D."

26. The Addyston Pipe and Steel Company, plaintiff in this case, has brought this suit upon the city orders, claiming that the city is liable for their payment.

27. That on April 1, 1895, a committee of the council, to wit: Cogswell, Edwards and Porter, to whom had been referred the matter of the settlement with Wm. J. Dunn, presented to the council of the city of Corry a report or settlement with the said Dunn, which was signed by the said committee, R. N. Seaver, mayor, and C. B. Porter, city clerk, who was also upon the said committee, and also signed by said Wm. J. Dunn.

That thereupon, the said report or settlement having been presented to the council, a quorum of which was present, the same was adopted, as follows: Mr. Thomas moved "that the report of the committee be adopted."   On roll call all members voted in the affirmative excepting Hammond and Love.

That all orders above set forth except the first four, came in the category of the said report, settlement and adoption.

28. That on December 6, 1892, the city solicitor of the city of

Corry presented a report and recommendation to the council of said city, which was unanimously adopted by the said council.

If the court shall be of opinion that, upon the facts herein stated, and the law as applicable thereto, the plaintiff is entitled to recover the amount of said orders, judgment shall be entered against the said city for the sum of $6,000; if he be of the opinion that the plaintiff is entitled to interest in said orders, there shall be added to said amount interest from the date of the respective orders. But, if he be of the opinion that plaintiff is not entitled to recover, then judgment shall be entered in favor of defendant, costs of suit to follow judgment. Both parties hereto expressly reserve the right to appeal from the decision of the said court.

The court entered judgment for defendant on case stated.

*Error assigned* was in entering judgment for defendant on case stated.

*C. George Olmstead* and *J. W. Sproul,* for appellant.—The doctrine of ultra vires when invoked for or against a corporation should not be allowed to prevail where it would defeat the ends of justice, or work a legal wrong: Ohio, etc., Railway Co. v. McCarthy, 96 U. S. 258; Salt Lake City v. Hollister, 118 U. S. 263; Hitchcock v. Galveston, 96 U. S. 341.

A contract for the construction of a sewer to be paid for by assessments upon property benefited does not create a debt and is not within the constitutional prohibition: City of Erie's App., 91 Pa. 398; Davis v. City of Des Moines, 71 Iowa, 500.

If the municipal corporation agrees with the contractor to collect the assessments from the abutting property owners, a failure to do so will render it liable: Morgan v. City of Dubuque, 28 Iowa, 575; Dillon on Municipal Corporations (4th ed.), sec. 480; Maher v. Chicago, 38 Ill. 266; Scofield v. Council Bluffs, 68 Iowa, 695; Weston v. Syracuse, 31 N. Y. Supp. 186; Little v. Portland, 37 Pac. Repr. 911; Barber Asphalt Paving Co. v. City of Denver, 72 Fed. Repr. 336; Reilly v. Albany, 112 N. Y. 30; Commercial Nat. Bank v. Portland, 33 Pac. Repr. (Ore.) 532.

*Albert B. Osborne,* for appellee.—Municipal warrants are not

negotiable to the extent of shifting off inquiry as to their legality, or defenses against their original holder : Boro. of Millerstown v. Frederick, 114 Pa. 435 ; East Union Township v. Ryan, 86 Pa. 459; O'Donnell v. Philadelphia, 2 Brewst. 482 ; Livingston's App., 9 Pa. Superior Ct. 110.

The rule contended for by appellant, that a corporation cannot successfully plead ultra vires to an executed contract, is not applicable to municipal corporations : McAleer v. Angell, 36 Atl. Repr. 588.

Nor does the receipt of the consideration support a promise to pay which was beyond the power of the municipality to make, or which was made in a forbidden way : Addis v. Pittsburg, 85 Pa. 379 ; Reilly v. Philadelphia, 60 Pa. 467 ; Erie v. Moody, 176 Pa. 478.

One who contracts with a town is charged with notice of the statutes limiting the power of the town to fulfill such contract: Raton Water Works v. Town of Raton, 49 Pac. Repr. 898; Drhew v. Altoona, 121 Pa. 422 ; Millerstown v. Frederick, 114 Pa. 441.

When warrants are drawn against a special fund there is no general liability imposed on the municipality : Lake v. Williamsburg, 4 Denio, 520.

A city cannot contract a general liability when it has reached the limit of its indebtedness : German-American Saving Bank v. Spokane, 49 Pac. Repr. 542; Wilson v. City of Aberdeen, 52 Pac. Repr. 524; Santa Cruez Rock-Pavement Co. v. Broderick, 45 Pac. Repr. 863 ; Drhew v. Altoona, 121 Pa. 422.

OPINION BY MR. JUSTICE MITCHELL, July 11, 1900 :

The city of Corry formally contracted for the building of a sewer, the contractor performed the work, the city accepted it, and is in possession, but it now seeks to escape payment on the ground that its contract was ultra vires.  If this is true the overruling requirements of public policy compel us to hold the defense good in law, however unjust and dishonest in morals. But the invalidity of the contract should be clearly established, and the burden of showing it is on the city.  This being a case stated all facts not contained in it must be assumed not to exist, and the consequences must fall on the party having the burden of proof.

The contract called for the building of a sewer for the price of $57,000, $9,300 of which was to be paid out of the general sewer fund, and the remainder to be assessed upon the property benefited by the contemplated sewer. The city by ordinance appropriated the $9,300 out of the general sewer fund and it was duly paid, so that it is only material to the present inquiry so far as it may bear upon the validity of the contract at the time it was made. By ordinance and proceedings in court the rest of the contract price was duly assessed upon the property benefited, including that which abutted on the line of the sewer, and some that did not. The city collected all of the assessments of the former class and many of the latter, and has paid out all the orders on the treasurer given to the contractor so far as the funds collected would go. But some owners of non-abutting property having resisted payment, the assessments of that class were held invalid, and the funds not being produced from the expected source, payment of the outstanding orders was refused and the holder brought this suit upon them.

At the date of the contract in 1891 it is admitted that the debt of the city of Corry was in excess of its constitutional limit, but several years having been consumed in the building of the sewer the debt meanwhile had been so far reduced that the balance due on this contract could be paid without transgressing the constitutional restrictions. On this point, however, the court below rightly held that the validity of the contract must be determined as of the time it was made. The question therefore is, did this contract increase the debt of the city of Corry at the date of its execution.

As to the $9,300 to be paid by the city out of the general sewer fund, there is nothing in the case stated to show that the amount was not then in the city treasury or payable and subsequently paid out of the current revenues. This item therefore did not increase the city's indebtedness in the prohibited sense. There is no constitutional restriction on municipal expenditure, provided it is paid as it goes. What is prohibited is the incurring of debt. If the city has the money on hand or provides at the time a present means of raising it otherwise than by loan, it may contract for expenditure without restriction. In Appeal of the City of Erie, 91 Pa. 398, GORDON, J., quoting from Grant v. City of Davenport, 36 Iowa, 396, says:

" When a contract made by a municipal corporation pertains to its ordinary expenses and is, together with other like expenses, within the limits of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the incurring of indebtedness within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts."   And he adds: " If the contracts of municipal corporations do not over-reach their current revenues, no objections can lawfully be made to them, however great the indebtedness of such municipalities may be; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created."   This is quoted with approval by our Brother DEAN in Wade v. Oakmont Boro., 165 Pa. 479, 488.

It is not, however, always possible to adapt present action to future results with absolute precision, and if means are adopted which in good faith, according to reasonable expectation, will produce a sufficient fund, the contract entered into on the faith of them should not be held unlawful on account of an unintentional miscalculation, or an accidental and unexpected failure to produce the full result.   Thus if a city at the time of making a contract levies a special tax in good faith supposed to be adequate to meet it, but in consequence of fire or flood or decline in values the result is an insufficient fund, it cannot be held that the contract good at its inception would thereby be made bad.   The constitutional restriction was not intended to make municipalities dishonest, nor to prevent those who contract with them from collecting their just claims, but to check rash expenditure on credit, and to prevent loading the future with the results of present inconsiderate extravagance.

In the present case the city of Corry provided the contract price of the sewer by an appropriation of money which, as already said, we must assume to have been in the treasury, and by assessments upon the property benefited.   There is nothing to indicate that these assessments were not in good faith and reasonable expectation supposed to be adequate to produce the required fund and offered and accepted by the contracting parties in the mutual belief in their validity.   So far as they were upon abutting property they fulfilled their intended purpose. The distinction in regard to nonabutting property had not then

been made, and was not in contemplation of either side. When it was determined that this part of the agreed means of payment would be unavailable, the loss should in equity and justice fall on the city which has received the full consideration stipulated for, and to this extent paid nothing.

The cases on this subject are conflicting. See Dillon on Municipal Corporations (4th ed.), secs. 480–482 and notes. They show that there is no disposition of the question which is wholly free from difficulty. We have preferred to follow the line which we think not inferior in just legal reasoning, while clearly superior in the honesty and justice of the result reached.

There is another view of this particular case which leads to the same conclusion. As already said the building of the sewer occupied several years. During the progress of the work differences arose in regard to payments, and in 1895 a compromise was agreed upon between the contractor and a committee of the city council, subsequently ratified by ordinance, whereby the outstanding orders in favor of the contractor were canceled, and new orders issued against which the city stipulated that no defense should be made by it. Among such new orders are those now sued on. The validity of the assessments on nonabutting property was then undecided. The contractor agreed to furnish additional counsel and aid in the prosecution of a test case on this subject, and to abate the sum of $550 from his claim, should such suit be decided against the city. This compromise was carried out by the parties except as to the payment of the orders involved in this suit. No reason is shown why it was not entirely valid and binding. The case stated does not show that the stipulated payments on these orders could not at that time have been made from money in the treasury, or from current revenue, even if that fact had been a necessary element in the validity of the compromise.

Judgment reversed and judgment directed to be entered for the plaintiff for $6,000 with interest.