## Lease of School Buildings

644

BARCO, Deputy Attorney General, November 12, 1940. —In your recent memorandum you inform us that you are desirous of being advised if your department can approve a contract providing for the leasing of a school building to a school district by a holding company.

You also inform us that you have received many inquiries on similar plans from various school districts in this Commonwealth, but that you are only requesting us to advise you on the inquiry that you received from East Buffalo Township, Union County, Pa., which calls for a discussion of the general principles of law which are applicable to the particular plans submitted to you for approval.

From a study of the various legal instruments, and of the information furnished us, we find that there has been organized in East Buffalo Township, Union County, Pa., a nonprofit corporation, known as the School Association of East Buffalo Township, for the purpose of purchasing a tract of land from the school district of the said township, issuing bonds in an amount not more than $40,000, erecting school buildings, and leasing the said school buildings to the said school district. This plan is similar to what is known in Pennsylvania as the Troy Plan; and is also similar to what has recently been enacted by the legislature as The General State Authority and Municipality Authority Plans.

The Troy Plan has been used in approximately forty school districts in Pennsylvania. Under this plan a school district that has borrowed up to the limit of its indebtedness (either the two or seven percent), and still requires further finances for new buildings, obtains the organization of a nonprofit corporation by the citizens of the dis-

trict. This corporation, by bond issue, raises the money required for the erection of the buildings and leases this building to the school district for a term of years. After the bond issue is paid by the nonprofit corporation, the practice has been for the corporation to transfer the school building and land to the school district.

We shall answer your questions as we state them:

## I.

Can the association obtain the land for the proposed building from the municipality or school district?

In Mansfield Borough School Dist. v. Mansfield High School Assn., 9 D. & C. 113 (1926), the school district agreed to sell the real estate to the association by fee simple deed, for the consideration of $1. The court decided that this was the only reason that the plan should not be approved. Its discussion applies to the East Buffalo Township plan (p. 122):

"We must not forget that the school board is not dealing with an individual, but with a corporation, and that, because of this, the dealings must be at arm's length."

In the present case, it is agreed that the school district shall sell and convey to the association the required land for a consideration of $500. There is no doubt that, under the provisions of the School Code of May 18, 1911, P. L. 309, art. VI, sec. 602, its supplements and amendments, 24 PS §672, 24 PS §672 (a), a school district may sell and convey land which it owns for a fair consideration.

This sale of land from the district to the association can be considered as a sale of land for a valuable consideration, even though it be part of a plan of financing, provided that the consideration is fair and adequate. Upon its fairness or adequacy, we pass no opinion.

## II.

Can a school district lease a building and land for school purposes from the association?

The association has power to lease land or buildings owned by it to the school district of East Buffalo Township by reason of the fifth paragraph of its articles of incorporation, which provides: "To sell and convey, lease as lessor, and otherwise dispose of all or any part of its property and assets".

Under the provisions of the School Code, supra, art. VI, sec. 602, its supplements and amendments, the school board has the power to lease land or buildings from an individual or corporation. In the following case, the court has upheld the power of a school district to rent buildings and real estate from a corporation: Mansfield Borough School Dist. v. Mansfield High School Assn., supra.

While it is obvious that the association has the power to lease the land and buildings it owns to the school district, which has the right to rent them, there are several correlative inquiries relating to the proposed lease on which we will now comment.

### III.

Can the school district bind itself by a lease for 30 years without violating the provisions of article IX, sec. 10, of the Constitution?

In the Mansfield School case, supra, the lease was for a period of 40 years and the court held (pp. 117, 118):

"The third proposition, viz.: Can a school board enter into a lease for a school building for a term of forty years under conditions such as are set out in these proceedings?

"The court is convinced that the school district is empowered to enter into such a lease.

"The instant case justifies this conclusion.

"Here the school board finds as a fact that a high school building is necessary, and yet it cannot construct such building because of financial inability. The board has the opportunity, however, of leasing a building that will meet all of the requirements of the school district, providing it will agree to rent the building for a term of forty years.

"After due consideration, the members of the board unanimously, and very wisely, agree that the best interests of the school district will be conserved by accepting said offer.

"Under section 401 of article IV of the Act of May 18, 1911, P. L. 309, 329, it is provided that the board of school directors in any school district *shall* establish, equip and maintain a sufficient number of elementary schools, etc., and *may* establish high schools, etc., as they, in their wisdom, may see fit to establish. Whether the word 'may,' as used in this section relating to the establishment of a high school, should be construed as 'shall,' is not necessary to determine in this case, although we believe that whenever the school directors unanimously decide in their wisdom that a high school is necessary, the erection or the leasing of such a building *should be mandatory*. . . .

"So far as this court can find, there is no constitutional or statutory provision in Pennsylvania limiting the time for which leases may be made."

In Appeal of the City of Erie, 91 Pa. 398, the city bound itself in a lease for a market house for 25 years; the court, while not approving the lease, held that such a lease, *regardless of the term if payable from the current revenues*, is not an increase of the indebtedness. This same legal principle has been upheld time and again, as is indicated by the following cases: Kelley v. Earle et al., 320 Pa. 449 (1936), and 325 Pa. 337 (1937), and Williams v. Samuel et al., 332 Pa. 265 (1938), all providing for a 30-year lease.

In Gemmill v. Calder et al., 332 Pa. 281, 284 (1938), the lease for a sewer project provided for a term of 26 years. Mr. Justice Schaffer, in discussing article IX, sec. 10, of the Constitution, held:

"This section of the Constitution has no application. It is expressly provided that the obligations of the Borough of Swarthmore under the agreement are to be met from current revenues. A contract which can be fully met from

current revenue is not within the prohibition of this section . . ."

It is evident, therefore, that the school district can bind itself for a lease of 30 years, as long as the rental imposed upon it can be, and is to be, met from the district's current revenue.

It is to be well noted, however, that in the sixth paragraph of the agreement, beginning at page 9 of the resolution and the lease at page 20 of the resolution, there is additional rental, being upkeep and maintenance, to be paid by the school district. While such provisions are usually found in contracts of the General State Authority, we believe that some change is necessary in this case to meet the legal requirements relating thereto. We must keep before us at all times the fact that one of the controlling features of our problem is whether, in this case, the school district is creating a debt which is chargeable to its borrowing power.

In the phraseology used in both the contract and the lease, there are one or two provisions which the courts might interpret as creating a debt which would be chargeable to the borrowing capacity of the school district. These are provisions $6(b)$ and $6(b)(2)$ of the agreement and corresponding sections of the lease, which provide for the insurance of the building by the school district for the full value of the building, and the proceeds are payable to the association. Care should be exercised to see that the property be insured for its full value, for otherwise it might well be that the school district would be obligating itself to pay the balance to reconstruct the building in the event of a fire; second, that if the building is burned the association shall use the proceeds of the insurance and apply the same to the cost of reconstruction of the building, and the school district shall pay the balance. To illustrate our point, let us suppose that the entire cost of the construction of the building will be $40,000 and that in 15 years, when the rentals up to that point will have amortized half of the original cost, the building were to burn down. If the in-

surance at that time were in the amount of half of the original cost, the insurance recovered would be $20,000, and the school district, by signing the lease, would be obligating itself to pay the additional $20,000. Such obligation might carry it beyond its two and seven percent constitutional borrowing capacity. This obviously would be illegal, and we are of the opinion that the school district could not so obligate itself at this time for, as we understand it, it is practically up to the limit of its two and seven percent borrowing capacity now, and therefore this provision should be eliminated from both the contract and the lease or modified. It would seem to us that the contract and lease could be changed to take care of such a situation by providing that in the event of a loss by fire the building association is to rebuild the building, and the rate of rental which is to be paid for 30 years would be extended for a sufficient additional number of years, instead of being reduced to $25 a year, as now stated in the contract.

The remainder of the contract and lease seems to us to be in good order, and contains no provision which would create an indebtedness chargeable against the borrowing capacity of the school district. The first and most important feature of contracts and leases of this nature is the phraseology used in the agreement or lease. By that we mean the agreement or lease must be couched in such words that the school district is not obligating itself to a debt which is chargeable to its borrowing capacity. The courts have repeatedly said that, if the current expenses can be taken care of out of current revenue, then the obligation is not chargeable to the borrowing capacity of the school district, but where the obligation cannot be paid in the fiscal year then it does create a debt which is chargeable to its borrowing capacity. It is, therefore, easy to see how, if the school district were to agree to pay half the cost of the reconstruction of the building, it could not be paid out of the current revenue and, therefore, would be a debt chargeable to its borrowing capacity.

## IV.

Do the provisions in the agreement or the lease, or in the trust agreement, providing for the event of default, in any way make it possible that a debt will be created against the School District of East Buffalo Township?

From a study of the various documents submitted to us we notice that the only thing that the association can do to the school district is to take back the building and collect whatever rent there may be due from the current revenues only. Under the decisions in Kelley v. Earle et al., supra, there is no possible way by which this lease can create a debt against the municipality. Our conclusion in this respect is strengthened by reference to the following:

Under article IV of the trust agreement, beginning on page 52 of the resolution, the trustee and bondholders have the following remedies against the association, upon default by the association:

1. To declare all the principal and interest due immediately.

2. To take possession of the premises and do with the said premises as the said trustee or bondholders may see fit.

3. To sell the said property at public or private sale.

However, the above remedies against the association are given subject to the provision found in the trust agreement on page 55 of the resolution which, briefly, provides that the trustee for the bondholders, in case he takes possession for the bondholders by reason of default in the rent, takes subject to the conditions that the rent, expenses, and costs can only be paid from the current revenue; and that all unpaid taxes for the year when the default occurs shall be liable regardless of the year in which taxes are collected.

In addition to the above provision we find that the trust agreement provides, on page 70 of the resolution, that the trustee for the bondholders agrees to be bound by the provisions of the lease entered into by and between the

association and school district, in that in the event of default in the payment of rent, payment is to be expected only from the revenue realized during the current year when the default occurs.

It will be seen, therefore, that as against the association the trustee and bondholders have practically every remedy that the law allows, but should the trustee or bondholders take over the property of the association, they are limited by the provisions of the lease and agreement providing for default by the school district to the remedies allowed the association against the district. These provisions in our opinion eliminate the objections, with reference to the remedy against the municipalities, which were raised by the Supreme Court in the case of Gemmill v. Calder et al., supra, p. 285. We believe, therefore, that no debt will be created against a school district in the event of default.

## V.

What effect do the renewal provisions in the agreement and lease have as to the validity of those instruments, and as to the relationship between the school district and the association?

The agreement and lease provide that, should the bonded indebtedness of the association not be fully paid at the end of the term of the lease, the school district shall have the right and privilege of renewing the said lease from year to year on the same terms and conditions; that after the said bonded indebtedness is fully paid, then the school district shall have the option of renewing the lease from year to year on the same terms and conditions, except that the rental shall be but $25 a year.

We specially note that there is no provision for the resale or assignment of the property to the district after the indebtedness is paid. In Kelley v. Earle et al., 320 Pa. 449 (1936), at page 455, it is found that the contract between the authority and the State provided:

"(c) That at the expiration of the term of the lease and upon payment of the rent stipulated therein, title to said

water-works to be transferred or conveyed to the Commonwealth of Pennsylvania, free and clear of all encumbrances, together with the site or sites upon which the same is to be erected . . .".

It was partly because of this stipulation in the first Kelley v. Earle case, in that it so obviously was attempting to do something indirectly which could not be done directly, that the lease between the authority and the State was held unconstitutional. When this objectionable feature was eliminated, as it was in the second case of Kelley v. Earle et al., 325 Pa. 337 (1937), the lease was approved.

A similar provision was also approved in Mansfield Borough School Dist. v. Mansfield High School Assn., supra.

The other objections that were raised in the first Kelley v. Earle case, supra, have been avoided in the plan that you have submitted to us. Therefore, we need not concern ourselves with an extended discussion as to whether or not the agreement and lease between the School Association of East Buffalo Township and the school district increased the school district's indebtedness, or with the fact that the school board pays for the maintenance and upkeep of the proposed new buildings, as affecting the validity or constitutionality of the agreement or lease; nor is the plan as submitted contrary to the provisions of article IX, secs. 7, 8, and 10, of the Constitution of Pennsylvania, because in the following cases the courts have held that this arrangement does not increase the indebtedness of the school district: Appeal of the City of Erie, supra; Wade et al. v. Oakmont Borough et al., 165 Pa. 479 (1895); McKinnon v. Mertz, 225 Pa. 85 (1909); Rettinger v. Pittsburgh School Board, 266 Pa. 67 (1920); Mansfield Borough School Dist. v. Mansfield High School Assn., supra; Tranter v. Allegheny County Authority et al., 316 Pa. 65; both cases of Kelley v. Earle, supra; Campbell et al. v. Bellevue Borough School Dist., 328 Pa. 197 (1937); Dornan v. Philadelphia Housing Authority et

al., 331 Pa. 209 (1938) ; Williams v. Samuel et al., supra; Gemmill v. Calder et al., supra.

Any of the other constitutional objections which have been raised to the State authority cannot possibly be applied to a contract and lease between a municipality and a private corporation.

In conclusion we desire to emphasize that this opinion relates only to the specific facts herein considered; and that this opinion does not purport to be applicable to other cases of a similar nature. That is to say, any other contracts which may be somewhat similar must stand on their own facts. The phraseology of each of the various agreements, leases and contracts must decide whether or not a school district may enter into a contract and lease with a nonprofit corporation such as the holding company in this case.

We are of the opinion, and you are, therefore, advised, that:

1. A school district may sell and convey land which it owns for a fair consideration.

2. A school board has the power to lease land for buildings from an individual, or a corporation, such as the School Association of East Buffalo Township.

3. The lease presented to us for consideration is legal in the following respects:

The school district can bind itself to a lease for 30 years, as there are no constitutional or statutory provisions in Pennsylvania limiting the time for which leases can be made.

Since the rent is payable out of the current revenues, it is not an increase or "the incurring of indebtedness" within the meaning of the constitutional provisions limiting the power of municipal corporations to contract debts.

4. The lease is not legal insofar as provisions 6 (*b*) and 6 (*b*) 2 are concerned, inasmuch as they provide for the replacement of a school building in case of destruction by fire, and unless adequate fire protection by the school district can be secured, it would result in the school dis-

trict obligating itself to reconstruct the building. This would doubtless carry the school district beyond its constitutional borrowing capacity if the reconstruction costs could not be paid out of the current revenues. In this respect the terms of the lease must be eliminated or modified in relation to the school district's obligation to pay the balance of the costs of reconstructing the building in the event of destruction by fire.

5. The provisions in the agreement or lease, and in the trust agreement, providing remedies in the event of default, do not create a debt against the school district. These provisions merely provide that the only thing which the association may do is to take back the buildings and collect whatever rent may be due from the current revenues only.

6. The renewal provisions in the agreement and lease are legal. They merely provide that the school district enter into a lease for the rental of a building for which it pays a moderate annual rental and do not provide for the purchasing of a building on the future credit of the school district.

7. The agreement and lease do not, excepting as we have hereinbefore mentioned under conclusion no. 4, provide for an increase in the indebtedness of the school district, inasmuch as the rentals and other expenses are payable only from the current revenues of the school district and from none of its other funds.

8. The agreement and lease are legal even though they provide that the school district, in addition to paying the annual rentals, must pay for the maintenance and upkeep of the proposed new building.

9. The agreement is not contrary to the provisions of sections 7, 8, and 10 of article IX of the Pennsylvania Constitution; nor do any of the other constitutional objections raised against the State authority apply to our case, inasmuch as we are concerned merely with the contract and lease between a municipality, a school district, and a private corporation, the School Association of East Buffalo Township.