# York City v. Eyster, Appellant.

*Road law—Paving—City of the third class—Assessments against owners—Act of June 27, 1913, P. L. 568.*

The action of a city of the third class under the Act of June 27, 1913, P. L. 568, in paving certain streets at its sole cost and expense, will not prevent it from subsequently providing for the paving of other streets by assessments against abutting owners by the foot front rule. The Act of 1913 does not materially change the law as it existed under Section 10 of the Act of May 23, 1889, P. L. 288, as amended by the Act of May 16, 1901, P. L. 224, under which acts it was held that when a municipality adopted one system of payment for certain streets, it was not prohibited from adopting another system for different streets.

A municipality cannot legislate so as to deprive itself, or future councils of the corporate authority granted by the legislature to enact measures for the benefit of the municipality, the levying of taxes, or the improvement of other streets as their judgment dictate. If a gross abuse of discretion is attempted to be perpetrated, owners should move to determine such question before the city has caused to be spent a large amount of money on the faith of ordinances providing for an improvement. One cannot stand idly by until streets are paved and then assert that there has been a gross abuse of discrimination.

A city may properly discriminate between different localities and different streets without abuse of discretion, and without impaling Section 10 of the Act of June 27, 1913, P. L. 568, on the prohibition contained in Article 9, Sec. 1, of the Constitution.

*Constitutional law—Title of act—Road law—Act of June 27, 1913, P. L. 568.*

The Act of June 27, 1913, P. L. 568, entitled "An act providing for the incorporation, regulation and government of cities of the third class, etc.," is sufficient in its title, and does not violate Article 3, Sec. 3, of the Constitution of Pennsylvania.

*Road law—Improvement bonds—Assessments—Lien—Notice—Municipal lien.*

Where improvement bonds are issued to a contractor for paving

a street, and the bonds provide that they shall rest upon and be payable out of assessments and from no other fund, and a lien is filed by the city and suit brought in the name of the city, the abutting owner cannot defend on the ground that he was not given notice as provided by the Act of June 4, 1901, P. L. 364, as amended by the Act of March 19, 1903, P. L. 41, or on the ground that the claim was not filed to the use of the contractor.

When the cost and expenses of paving a street are assessed against abutting owners, there must be an equitable reduction for the frontage of lots which from "their peculiar or pointed shape, an assessment for full frontage would be inequitable," as provided by Section 10 of the Act of June 27, 1913, P. L. 568. The ordinances authorizing the improvement need not contain this clause of the act, but the act must be followed when the assessment is made, and if it is not complied with the owner does not lose his right to contest the amount of the assessment.

Argued March 13, 1917. Appeal, No. 11, March T., 1917, by defendant, from judgment of C. P. York Co., Aug. T., 1916, No. 45, on trial by the court without a jury in case of York City v. Jacob Eyster. Before ORLADY, P. J., PORTER, HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Scire facias sur municipal lien.

Ross, J., found as follows:

1st. On the 23d day of February, 1915, the plaintiff filed a municipal lien against the defendant and the property described by said lien, in the office of the prothonotary of this court.

2d. The affidavit of defense was offered in evidence "for the purpose of sustaining the issue on the part of plaintiff under the twentieth section of the lien Act of June 4, 1901, which makes the claim prima facie evidence of the averments contained therein."

The defendant not objecting, the affidavit of defense was admitted.

"Jacob Eyster, the above named defendant, having been duly sworn before me, did depose and say that he has a just and legal defense to the whole of the plaintiff's

claim in this case, the nature and character of which is as follows:

"First. That the lot of ground situate at the northeast corner of Linden avenue and Hawthorne street, in the said City of York, against which this municipal claim was filed, is located as set forth in said claim.

"Second. That the municipal claim filed in this case, and upon which this writ of scire facias was issued, was not filed by the City of York to the use of the contractor who performed the work, to wit, the Standard Bitulithic Company, as required by the 4th section of the Act of the 4th of June, 1901, P. L. 364, and its several amendments thereof and supplements thereto, and by virtue of which acts the municipal claim in this case purports to have been filed against the therein described property of this defendant.

"Third. That the Standard Bitulithic Company, the contractor who performed this work for which this municipal claim was filed, did not serve upon this defendant, at least one month before filing the claim, a written notice of his intention to file it, unless the amount due should be paid.

"Fourth. That the said City of York was without power to assess or file a municipal claim against the said property of this defendant for the cost, or any portion thereof, of the said repavement laid upon said portion of Hawthorne street, upon which said property abuts, under or by virtue of any act of assembly of the Commonwealth of Pennsylvania, or any ordinance of the City of York.

"Fifth. That the portion of the act of assembly under which this contract was let and the paving done, to wit, the 10th section of 'An act providing for the incorporation, regulation and government of cities of the third class; regulating nomination and election of municipal officers therein; and repealing, consolidating and extending existing laws in relation thereto,' approved the 27th day of June, A. D. 1913, is unconstitutional and void, in that it violates Section 1, Article IX, of the Con-

stitution of the State of Pennsylvania, which provides that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the same, and shall be levied and collected under general laws.

"Sixth. That the said act approved June 27, 1913, is unconstitutional and void, in that it violates Section 3 of Article III, of the Constitution of Pennsylvania, which provides that no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title.

"Seventh. This defendant further avers that he is not indebted to the City of York in the amount attempted to be collected in this suit, or in any sum whatsoever, because of said repaving of said portion of Hawthorne street upon which his said property abuts, and that his said property is not subject to a municipal claim for the same, or any part thereof.

"All of which this defendant believes and expects to be able to prove at the trial of the case."

3d. The City of York is a city of the third class and was incorporated by letters patent of the State of Pennsylvania in the month of January, A. D. 1887, and is subject to the provisions of the acts mentioned in the fourth paragraph of the municipal claim in this case.

4th. On the 8th day of March, 1913, councils of the said City of York enacted an ordinance entitled "An ordinance authorizing and defining the duties of the mayor, city engineer, city solicitor, highway commissioner, the city clerk, sinking fund commissioners and abutting property owners in relation to the paving of highways and providing for advertising ordinances for paving without petition of property owners," which ordinance is attached hereto and made a part of this agreement and marked "Exhibit A."

5th. On the 1st day of May, 1914, the council of the said City of York enacted an ordinance authorizing the paving of certain streets and highways in said City of

York, including said North Hawthorne street from Linden avenue to Madison avenue, which ordinance is also attached hereto and made a part of this agreement, and marked "Exhibit B."

6th. After the passage of said ordinance of May 1, 1914, to wit, on June 19, 1914, the said City of York entered into a contract with the Standard Bitulithic Company providing for the paving of said North Hawthorne street from Linden avenue to Madison avenue, a copy of which contract, including the specifications which were made a part thereof, is attached hereto and made a part of this agreement and marked "Exhibit C," section thirty-eight of which reads as follows:

"38. The City of York will pay to the contractor the amount set forth in the bid for work done, completed and accepted, in accordance with the terms of this contract, as follows:

"It is understood that the cost of said improvements shall be paid as follows:

"First. The City of York will pay for the costs of paving the intersections of streets and alleys out of moneys set aside by Ordinance No. 21, Session of 1914, upon the approval and acceptance of said work by the city council and will also pay all the assessments actually paid by the property owners on account of said improvements, at the expiration of ninety (90) days after the approval and acceptance of the work by the city council; but under no circumstances shall the City of York be held liable or responsible for the payment of any other part of the consideration of this contract.

"Second. At the expiration of three months after the completion of the work and its approval and acceptance by the city council, the mayor, city treasurer, and superintendent of finance shall make and issue to the contractor, improvement bonds, in the usual and proper form, with coupons attached for the amounts of the assessments outstanding, which bonds shall rest alone upon and be payable out of said assessments, and from

no other fund; said bonds and all transfers therefor shall be registered at the city treasury and shall be issued in the denominations of one hundred ($100) dollars, two hundred ($200) dollars, five hundred ($500) dollars or one thousand ($1,000) dollars, be numbered seriatim, bear interest at the rate of five per centum per annum, payable semiannually out of the assessments, and shall express upon their face that they rest for payment upon Section 27, Article XV, of the Act of Assembly, approved May 23, 1889, P. L. 325-6, entitled 'An Act providing for the incorporation and government of cities of third class,' and all other acts amendatory and supplementary thereto, and the ordinance authorizing this improvement, and shall be called in and redeemed by the city treasurer whenever the amount necessary accumulates in the city treasury for the said assessments."

7th. After said contract had been entered into the Standard Bitulithic Company paved the said portion of North Hawthorne street, between Linden avenue and Madison avenue, as therein provided, and that Jacob Eyster, the above named defendant, is the owner of a house and lot of ground situate on the northeast corner of Linden avenue and Hawthorne street, and that the amount assessed against his said property, according to the front foot rule, for the paving of said Hawthorne street, is four hundred twenty-seven dollars and forty-five cents ($427.45).

The 3d, 4th, 5th, 6th, and 7th findings of fact are in accordance with a written agreement of counsel.

8th. The said Jacob Eyster, the above named defendant, refused to pay the said assessment, and thereafter the said City of York gave notice in writing to the said defendant that the said City of York would file a lien against the said defendant unless the amount due were paid on or before December 25, 1914.

9th. The said defendant failed and refused to pay the said sum so as aforesaid assessed against him by the said City of York within the time specified in said notice, and

thereupon the said City of York, after the expiration of the time named in said notice, to wit, on the 23d day of February, 1915, filed in the office of the prothonotary in the Court of Common Pleas of York County the lien in suit against the said property of the defendant.

10th. The said Standard Bitulithic Company, the contractor who performed this work, for which this municipal claim was filed, did not serve upon this defendant at least one month before the filing of said claim a written notice of its intention to file it unless the amount due would be paid.

11th. The municipal claim filed in this case and upon which this writ of scire facias was issued was not filed by the City of York to the use of the contractor who performed the work, to wit, the Standard Bitulithic Company.

12th. The assessments were made upon all the properties on North Hawthorne street between Linden avenue and Madison avenue, liens filed to secure unpaid assessments and bonds were issued to the Standard Bitulithic Company, contractor, in accordance with sections 3, 4 and 5 of said ordinance of March 8, 1913.

### FINDINGS OF LAW.

1st. The ordinances of the City of York, by virtue of which the municipal lien in controversy was filed, were in substantial compliance with Acts of General Assembly of Pennsylvania then in force.

2d. The 10th Section of Article V, of the Act of June 27, 1913, P. L. 568, does not violate the requirement of the State Constitution, Section 1 of Article IX.

3d. The Act of June 27, 1913, P. L. 568, does not violate Section 3 of Article III, of the State Constitution.

4th. There was no evidence in the case, which showed, or tended to show, that the assessment on the defendant, was not uniform with other assessments made on the owners of the same class of real estate abutting upon the

street and within the territory designated by the ordinances.

*Error assigned* was the judgment of the court.

*James Graham Glessner,* with him *Cochran, Williams & Kain,* for appellant.—The lien is void for this reason and no recovery can be had thereon by the plaintiff: City of York v. Miller, 60 Pa. Superior Ct. 407; City of York v. Miller, 254 Pa. 436.

If the assessment of the property owners for the payment of the cost of paving is a tax, taxation for this purpose in the City of York is not uniform.

The Supreme Court of Pennsylvania in a number of cases has held that the raising of money to pave the driveway of a street is an exercise of the taxing power as distinguished from the police power, and that such assessment is a tax. This was held in Franklin v. Hancock, 204 Pa. 110; Hammett v. Philadelphia, 65 Pa. 146; In re: Centre Street, 115 Pa. 247; Wilkinsburg Borough v. Home for Aged Women, 131 Pa. 109; Olive Cemetery Co. v. Philadelphia, 93 Pa. 129.

*John L. Rouse,* City Solicitor, for appellee.—It has been decided repeatedly that while an assessment for the cost and expense of paving a street is in the nature of a tax, it is not a tax within the meaning of the constitutional provision requiring all taxes within the territorial limits of the taxing power to be uniform upon the same class of persons: Anderson v. Lower Merion Twp., 217 Pa. 369; Philadelphia v. Union Burial Ground Society, 178 Pa. 533; Chester City v. Black, 132 Pa. 568; Huidekoper v. Meadville, 83 Pa. 156; Harrisburg v. McPherran, 14 Pa. Superior Ct. 473; Beaumont v. Wilkes-Barre, 142 Pa. 198; Harrisburg v. McCormick, 129 Pa. 213; Vacation of Howard Street, 142 Pa. 601; Philadelphia v. Penna. Hospital, 143 Pa. 367; White v. Meadville, 177 Pa. 643.

We contend that we were not required to file the municipal claim to the use of the contractor who performed the work: Gable v. Altoona, 200 Pa. 15.

OPINION BY KEPHART, J., July 13, 1917:

The street in front of appellant's property was paved under ordinances of council and the cost thereof assessed by the foot front rule. Other streets in the City of York had been paved by the municipality, at its sole cost and expense, prior to the improvement of this street. Appellant's counsel contend that under the Act of 1913 the city has power to adopt any one of the methods specified in the act for paying the cost of an improvement, but when once they exercise that power, the method adopted must apply to all future paving, grading and macadamizing throughout the city; it cannot thereafter pay the cost of improving other streets by any of the other methods specified in the act. We cannot agree to this proposition.

Section 10 of the Act of June 27, 1913, P. L. 568, authorizes cities of the third class to provide for the payment of the cost and expenses of paving, grading or macadamizing any public highway. It may be done in whole or in part by the city or by the owners of real estate abutting on the improvement; the cost and expense, when paid by the abutting owners, shall be assessed according to the foot front rule or according to benefits, as council may by ordinance determine. This section of the act does not materially change the law as it existed under Section 10 of the Act of 1889, P. L. 288, as amended by the Act of May 16, 1901, P. L. 224. The power of the legislature to provide for assessments for special benefits in local improvements is too well settled to require discussion. It was held in Scranton City v. Bush, 160 Pa. 499, that under the Act of 1889 the city might use either plan of payment; when the municipality adopted one system of payment for certain streets it was not prohibited from adopting another system for differ-

ent streets.  We find nothing in the Act of 1913 which by
any reasonable construction changes the law as it then
existed.  The act does not attempt to restrict the power
of the city to determine the various methods of payment
that should apply to its streets.  The city does not ex-
haust its power when  a particular means of payment is
used for certain streets.  The means of payment is wholly
within the discretionary power of the city's law making
body.  It cannot legislate so as to deprive itself or future
councils of the corporate authority granted by the legis-
lature to enact measures for the benefit of the munici-
pality, the levying of taxes, or the improvement of other
streets as their judgment dictates.  The authority is ex-
hausted as council legislates for and improves desig-
nated streets.  Over those not improved as permanent
highways, the control of council is complete.  We would
not assert that a gross abuse of discretion might not be
perpetrated in determining what streets or parts of
streets should be paved wholly at the city's expense and
what streets should be paved at the expense of the abut-
ting owner.  This record does not show any discrimina-
tion and if it did and it were of such character that a
court could interfere, the complaining parties should have
moved to determine that question before the city had
caused a large expenditure of money to be made on the
faith of the ordinances providing for the improvement.
One cannot stand idly by until the streets are paved and
then assert that there has been a gross abuse of discre-
tion.  A certain amount of discrimination is bound to ap-
pear in the determination of all taxing and local improve-
ment problems; and though the city may cause certain
streets to be paved entirely at the public expense, and
other streets by the foot front rule, and thereby compel
the abutting owner to contribute, through taxation, to
the payment of the former paving, this circumstance
would not amount to such an abuse of discretion as to
render the act of council void, nor would the possibility
of such contingency arising impale this section of the

act on the prohibition contained in Art. IX, Sec. 1 of the
Constitution: Anderson v. Lower Merion Township, 217
Pa. 369. The reason for this rule is obvious. The loca-
tion of the population, the use made of the streets, and
many other considerations enter into the question of how
the payment of the improvement shall be made. This
must be determined by the local government and courts
should not interfere unless a palpable injustice war-
ranted it. And while the special benefit to the abutting
owner may be the limit of the taxing power, in determin-
ing his liability as it is affected by the action of the city
in paving other streets at the city's sole cost, there is a
presumption that in apportioning the cost through a
general system of taxation, the complaining owner, in
common with all others, derives a benefit. This is in
consonance with the general rule that the cost of making
public improvements must be borne by the public. When
a street or part thereof is selected to be improved within
the discretion of the legislative branch of the city's gov-
ernment, and contribution toward the cost is equally dis-
tributed within that street, it meets not only the equities
of the case but any constitutional prohibition. The prin-
ciple contained in White v. Meadville, 177 Pa. 643, has
therefore no application.

We are not convinced that this act of assembly as a
whole is unconstitutional, being in violation of Article
III, which provides that no bill, except general appro-
priation bills, shall be passed containing more than one
subject. We have frequently discussed titles to acts of
assembly as bearing on this article of the Constitution,
and need make no extended reference to them.

Section 4 of the Act of 1901, P. L. 364, as amended by
Section 2 of the Act of 1903, P. L. 42, requires, where the
contractor performing the work is to be paid by assess-
ment bills, the lien is to be filed to his use; by Section 9,
one month's notice must be given to the owner of the
property affected before the claim is filed. Improve-
ment bonds in the usual form were issued, which con-

tained a clause that the "bonds shall rest alone upon and be payable out of said assessments and from no other fund." The contractor accepted these bonds as payment. This lien was filed by the city and no notice of intention to file was given. We do not regard the means of payment as being a mere subterfuge to evade giving notice, nor do we regard the transaction as being equivalent to an equitable assignment of the assessment bills to the contractor. It was therefore not necessary to file the claim to the use of the contractor or to give notice. It is true the improvement bonds were a limited obligation to be paid by the assessment claims. It was nevertheless the duty of the city to collect these claims. As between the bondholder and the city, the city's liability would not end if its officers were negligent or careless in their collection, and its responsibility would not cease if there should be a diminution in the amount of these collections, occasioned through the voluntary act of the city. These questions only serve to emphasize the fact that the claims were solely and exclusively within the city's control, and the contractor could exercise no act of ownership over them. The contractor was paid by the bonds not by the assessment bills. See Gable v. Altoona, 200 Pa. 15; Dime Dep. & Dis. Bank of Scranton v. Scranton, 208 Pa. 383; O'Hara v. Scranton, 205 Pa. 142.

When the cost and expenses are assessed against abutting owners, there must be an equitable reduction for the frontage of lots which from "their peculiar or pointed shape, an assessment for full frontage would be inequitable." See Section 10 of the Act of 1913. The ordinances authorizing the improvement need not contain the clause of the act relating to this question. No uniform rule can be laid down that would apply equitably to all odd shaped lots. The act must be followed when the assessment is made, and if it is not complied with, the owner does not lose his right to contest the amount of the assessments. The affidavit of defense nowhere contends that the amount of the lien is unjust by reason of

the city's failure to make due allowance for a peculiarly shaped lot in accordance with the act.

The assignments of error are overruled and the judgment is affirmed.