City of Harrisburg *v.* Charles C. Stroh, Appellant.

Argued March 13, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Charles C. Stroh,* of *Stroh & McCarrell,* and with him *Thomas D. Caldwell, Arthur H. Hull* and *Scott S. Leiby,* for appellant.—The construction placed upon ordinance should be logical and consistent: Chestnut Hill, Etc. v. Montgomery County, 228 Pa. 1; Commonwealth v. Marks, 248 Pa. 518. City's prior policy must be considered: Wolff Chemical Co. v. Phila., 217 Pa. 215; Raff v. Philadelphia, 256 Pa. 312.

*John R. Geyer,* and with him *Paul G. Smith,* for appellee.—The entire cost of paving is placed on abutting property where non-assessable property abuts on the other side of street: McGonigle v. City of Allegheny, 44 Pa. 118. There was no gross abuse of discretion: Scranton v. Koehler, 200 Pa. 129; York.City v. Eyster, 68 Pa. Superior Ct. 104.

Opinion by Gawthrop, J., April 10, 1929:

The defendant appeals from an order of the court below making absolute a rule for judgment for want

of a sufficient affidavit of defense to a scire facias sur municipal lien for the cost of paving a section of North Front Street, in the City of Harrisburg, on the eastern side of which his property abuts. Front Street runs along the eastern bank of the Susquehanna River. Between the western line of the travelled highway and low water mark of the river, the city maintains a public park. On the section of street here involved the Commonwealth of Pennsylvania had constructed an improved highway sixteen feet wide and the street had not been otherwise improved until the paving in controversy was done. This sixteen feet wide strip fell within the lines of the proposed improvement for its entire length. The paving with which we are concerned was done under ordinance No. 179 of the city, approved July 26, 1927. It authorized that Front Street, between Division Street and the southern line of the Harrisburg Academy, be paved with asphalt to a width of thirty-six feet and curbed with granite curbing, and provided that the city should pay for the paving of the street intersections, the sixteen foot strip formerly improved by the Commonwealth, which the city treated as a repaving, and the curbing on the west side; the balance of the cost to be assessed against the property owners abutting on the east side according to the front foot rule.

The lien here involved set out that the work for which the claim was filed was done under and by virtue of this ordinance and the Act of May 23, 1889, P. L. 227; the Act of May 16, 1891, P. L. 75; the Act of June 27, 1913, P. L. 568; and the several amendments and supplements to said acts.

The affidavit of defense pleaded certain prior ordinances of the city, among them ordinance No. 19, approved February 3, 1914, wherein it was provided that subsequent ordinances for the paving of all public highways within the city should contain a provision that the cost and expense of paving street intersec-

tions and in front of non-assessable property should be paid by the city and should not be included in the assessment made against other properties fronting upon said improvement, and averred that since the enactment of this ordinance the city has, without exception, paid for the paving in front of non-assessable property out of city funds. It pleaded also ordinance No. 107, approved September 25, 1926, providing for the submission to the voters of the following question: "Shall the indebtedness of the City of Harrisburg be increased $200,000 for the paving of intersections of highways and in front of non-assessable properties?" It averred the fact (which is conceded by the city) that the majority vote of the electors on this question was in the affirmative. It pleaded ordinance No. 155, approved March 1, 1927, under which the city increased its bonded indebtedness to the extent of $200,-000 as authorized by ordinance No. 107. It averred also that the paving for which the claim was filed was bounded on the west by non-assessable property; that under the above mentioned ordinances, one-half of the cost of the improvement must be paid by the city from the moneys provided, and still sufficient, to pay for paving in front of non-assessable properties, and not more than one-half of the cost thereof, excluding the sixteen foot strip, should be assessed against the property abutting on the east side; that ordinance No. 179 is unfair, discriminating, invalid and unconstitutional, because it violates section 1, Article IX of the Constitution of Pennsylvania, and because it is not uniform taxation on the same class of subjects and attempts to charge against and collect from the defendant more than the plaintiff has charged against and collected from other citizens and property owners of the city, whose properties are similarly situated with respect to non-assessable properties. Defendant admitted liability for, and paid, one-half of the lien as filed, with interest, and defended as to the balance.

The first and main contention of appellant is that the city has no power to require owners of property on the east side of Front Street to pay any part of the cost of paving the west side of the street, because ordinances No. 107 and No. 155 and the mandate of the voters, as expressed in their vote authorizing an increase of $200,000 in the city's indebtedness for the purpose of paving intersections of highways and in front of non-assessable properties, provide otherwise. He says: "If ordinance No. 179 is valid, then it is necessary to interpret the mandate or 'constitution' of the voters and ordinances Nos. 107 and 155 as meaning 'for paving of intersections of highways and in front of non-assessable properties *such as council in its pleasure may select,*' or 'for paving of intersections of highways and in front of non-assessable properties *except those owned by the City of Harrisburg,*' or as meaning something different from what the plain words indicate." He urges further: "The action of the voters given November 2, 1926, ...... has the same binding force and effect on subsequent action of city council thereunder and pertaining to the subject matter thereof as the Constitution of the United States has upon the acts of Congress, and as the Constitution of Pennsylvania has upon acts of the State Legislature. City councils have no more right to disregard or to violate the action of the voters of the city given November 2, 1926, than has Congress to violate or disregard the provisions of the United States Constitution or the State Legislature to disregard or violate the Constitution of Pennsylvania."

This argument is fully answered by what was said by this court, speaking through KEPHART, J., in York City v. Eyster, 68 Pa. Superior Ct. 104, as follows: "Section 10 of the Act of June 27, 1913, P. L. 568, authorizes cities of the third class to provide for the payment of the cost and expenses of paving, grading or macadamizing any public highway. It may be done

in whole or in part by the city or by the owners of real estate abutting on the improvement; the cost and expense when paid by the abutting owners shall be assessed according to the foot front rule or according to benefits, as council may by ordinance determine ...... The act does not attempt to restrict the power of the city to determine the various methods of payment that should apply to its streets. The city does not exhaust its power when a particular means of payment is used for certain streets. The means of payment is wholly within the discretionary power of the city's law-making body. It cannot legislate so as to deprive itself or future councils of the corporate authority granted by the Legislature to enact measures for the benefit of the municipality, the levying of taxes, or the improvement of other streets as their judgment dictates. The authority is exhausted as council legislates for and improves designated streets." It must be presumed that when the electors of the city, by their vote upon the question as to the increase of indebtedness of the municipality for the paving of intersections of highways and in front of non-assessable properties, authorized the raising of the money, they intended that it should be applied in accordance with the existing law. As well stated by the court below, "the voters cannot by any 'mandate' set aside or violate the law as prescribed by the Legislature. What the voters did, was the giving authority to the council to increase the indebtedness of the city for the particular purpose. Nothing more." The spending of the $200,000 raised pursuant to the assent of the voters was and is within the discretion of council, subject only to the obligation to use it exclusively for the purposes for which the increase of indebtedness was authorized. Council was not required to use this fund to pay the cost of paving which could be assessed against the owners of abutting property. It was free to use it to pay for paving sections of streets bounded

on both sides by non-assessable property. It still had all the power and discretion conferred by the statute to determine the method of payment to be adopted in improving any particular street. Ordinance No. 179, under which the present assessment was made, is entirely independent of the other ordinances referred to. Nor is the right of the city to enforce it affected by any policy or practice formerly adopted and followed by city council in respect to the method of paying for original paving laid on streets on which non-assessable property abutted. While the city council might have paid the costs of paving this section of street out of the moneys raised pursuant to the increase of indebtedness authorized by the voters under ordinance No. 107, it was not bound to do so.

The only other proposition urged upon us is that if city council is permitted to depart from its long established policy of paying out of the general funds of the city the cost of paving in front of non-assessable property and not including it in the assessments of property owners on the other side of the street, it will impose on certain of its taxpayers, including appellant, burdens which were not imposed on other taxpayers similarly situated with reference to the improvement. We cannot adopt this view. This argument of appellant is answered in Phila. v. Penna. Salt Mfg. Co., 286 Pa. 1, 9, as follows: "The fact that the city paid for the paving of the street in front of other property abutting on the line of the improvement does not in this case amount to unlawful discrimination. If the assessment against the defendant was proper, it is no defense that an assessment was not made against another abutting owner. The right to assess by the front foot rule is a statutory one and is not dependent upon absolute uniformity throughout the city where conditions may require a different plan of payment. A contrary rule would prevent a

municipality, which has at any time adopted the plan of paying for paving out of general funds, from making a change to another method and assessing the cost against abutting owners, as the latter, under such circumstances, could at all times claim they had already paid their share of the improvement in front of other properties by way of general taxation and should not now be called upon to pay for the entire improvement in front of their own property. The objection here raised was made in Huidekoper v. City of Meadville, 83 Pa. 156, and held to constitute no defense." While, as was pointed out in York City v. Eyster, supra, a gross abuse of discretion may be perpetrated in determining what streets or parts of streets should be paved wholly at the city's expense, and what streets should be paved at the expense of the abutting owner, the affidavit of defense does not aver any facts which, if proved, would show any discrimination, and if it did defendant should have moved to determine that question before the city had caused a large expenditure of money to be made on the faith of the ordinance providing for the improvement. We repeat Judge KEPHART's words in the York case: "One cannot stand idly by until the streets are paved and then assert that there has been a gross abuse of discretion." The location of the population, the use made of the streets and many other considerations enter into the question of how the payment of the improvement shall be made. When a street or part thereof is selected to be improved within the discretion of the legislative branch of the city's government and contribution toward the cost is equally distributed within that street, it meets not only the equities of the case but any constitutional prohibition. We adopt the following from the very well considered and exhaustive opinion of the court below: "It is an admitted fact that Front Street, in the City of Harrisburg, is one of the beautiful streets of the world. It runs along

the Susquehanna River, presenting a clear view across the river from the eastern side of the street in most places, and in the region which is much improved by this modern paving, covered by ordinance No. 179, the view is unobstructed for a great distance and is remarkable for its scenic beauty. The values are much enhanced by a well paved highway. Council could consider this and the added improvement and enhancement of values to the abutting property on the east side of the highway as well as other matters, and could exercise discretionary power under the Act of Assembly to place a part of the cost on the abutting property owners and a part on the city, or the whole on either . . . . . . In placing the portion of the costs of the improvement which it did on the property owners in this particular instance, we see no abuse of discretion, nor do we see any unfair discrimination. If there were the defendant has delayed too long in setting up such defense. He should not have waited until the paving was completed before setting up his objection.''

The judgment is affirmed.