## City of Chester et al. v. Woodward.

John R. Geyer, for petition.

Cyrus E. Woods, Attorney-General, and Roscoe R. Koch, Deputy Attorney-General, contra.

Fox, J., Sept. 12, 1929.—The question raised by the petition and answer, which admits the facts averred in the petition, is, are bonds, commonly known as improvement bonds, issued by a city of the third class, under Act of Assembly approved May 23, 1889, art. xv, § 27, P. L. 277, for local improvements, which bonds are based solely on assessments on lands abutting on or benefited by such improvements, an incurring or increasing of indebtedness and must they be certified and submitted to the Secretary of the Department of Internal Affairs for his approval or disapproval as contemplated within the Act of March 31, 1927, P. L. 91?

The Secretary of the Department of Internal Affairs, by the Attorney-General, has made a motion to dismiss the petition for reasons, in substance, that the court, under the Declaratory Judgments Act, has no jurisdiction, the petition averring no facts to indicate the existence of an actual controversy between the parties; that the said Act of March 31, 1927, P. L. 91, and its Supplemental Act approved April 11, 1929, P. L. 516, provide an adequate, complete and convenient remedy at law for the settlement of the question now disturbing the plaintiffs and that the petition merely avers a difference of opinion between the parties as to the proper construction of the said Act of 1927, and is merely a request for an advisory opinion on a question of law.

The Act of 1927, supra, requires submission of certain securities about to be issued to the Department of Internal Affairs, together with a complete and accurate copy of the proceedings, the assessed valuation of the property subject to taxation within the respective municipalities, etc., requiring that the said official of the Commonwealth within twenty days after the receipt thereof, if such proceedings are found to be in accordance with the Constitution and the law, shall approve the same, and, if not so found, shall disapprove the same and certify accordingly to the municipality. The act further provides that "any officer of such municipality who fails or refuses to certify such proceedings or facts as required by the act shall be guilty of a misdemeanor, or and upon conviction thereof, be sentenced to pay a fine of not exceeding five hundred dollars or to undergo imprisonment for a period not exceeding six months or both."

The said Supplemental Act of 1929 provides, in section 1, that "when the proceedings for the incurring or increasing of indebtedness had by any municipality have been approved by the Department of Internal Affairs, as

provided for by the act to which this is a supplement, any person interested, and any taxpayer of the municipality, may, within thirty days after such approval, appeal therefrom by petition to the Court of Common Pleas of Dauphin County;" in section 3: "The municipality, the Department of Internal Affairs, any person interested, and any taxpayer may file an answer to such petition within twenty days after the appeal is taken;" in section 4: "The court shall fix a day for hearing. At the hearing the court may hear evidence;" in section 6: "From the final decision of the Court of Common Pleas of Dauphin County, an appeal may be taken within thirty days, and not thereafter, to the Superior or Supreme Court as in other cases." And in section 8 provision is made for an appeal by the municipality in the event of disapproval of the proceedings, etc.

The issuing of bonds by a municipality for an improvement such as the one in the instant case for the payment of work to be done is an important matter. When the work has been completed, the contractor is entitled to his prompt payment in accordance with the terms of the contract. The consequences to the mayor of the city who fails to certify the proceedings on the bonds as required to the department are serious. All of the parties have interests in the case, and there is a distinct disagreement between the plaintiffs and the defendant as to their rights, duties and legal status.

In the case of Kariher's Petition, 284 Pa. 455, our Chief Justice, in writing the opinion, has given an interesting historical sketch with copious references to what is commonly known as the Uniform Declaratory Judgments Act, and concludes the sketch with the words: "In our opinion, the Uniform Declaratory Judgments Act is a constitutional piece of legislation, which, within proper limits, can be made of real use."

In the report of the Committee on Declaratory Judgments to the National Conference of Commissioners on Uniform State Laws, which prepared and promulgated this statute, and which report appears in the hand-book of the said commissioners, printed Aug. 19, 1920, amongst other things, it is said: "That the declaratory action is in effect an action for the security and protection of existing rights, privileges, powers and immunities is made evident by tracing the history and purpose of the negative form of declaratory judgment. By this action the plaintiff asks a declaration that the defendant has no right as opposed to the plaintiff's privilege, i. e., that the plaintiff is under no duty to the defendant, or that the defendant, or that the plaintiff is under an immunity from any power of or control by (i. e., there is a disability of) the defendant. The danger of uncertainty and insecurity of rights and other jural relations against which the declaratory action was designed to guard, threatened in one of two ways—either by the defendant's denial of well-established and well-founded rights or other legal relations, or by the defendant's assertion of unfounded claims. It was to meet the second class of danger that the negative declaratory action was invented."

And in the "Reasons for the Adoption" of this Judgments Act, reprinted for the said National Conference of Commissioners, 1928, amongst other things, it is said: "The declaratory judgment allows parties who are uncertain as to their rights and duties to ask a final ruling from the court as to the legal effect of an act before they have progressed with it to the point where one has been injured."

In the American Bar Association Journal of December, 1928, in an article by Edwin M. Borchard, Professor of Law at Yale University, on "The Supreme Court and the Declaratory Judgment," on the latter subject he said:

"Its great advantage lies in the fact that it enables an issue to be narrowed and to be determined before breach or violence has occurred. It takes account of the fact that people may have controversies as to their legal rights under a written instrument, or otherwise, which require settlement by a court prior to the irretrievable destruction of economic and social relations consequent upon a breach or violence, and that in many cases grave doubt or uncertainty as to legal relations may disturb the social equilibrium and require prompt judicial settlement. In an economic world held together by a network of long-term contracts and governmental regulations and control, it seems crude to insist that a dispute arising between parties can only be judicially settled if one or the other acts at his peril upon his own interpretation of his rights and takes the fatal plunge. Relations once destroyed by open breach can rarely be knit together again.

"The rest of the English-speaking world and much of the Continent have long discovered that courts play an essential part in society, not merely to redress wrongs already committed or just about to be committed but to determine controversial issues by removing clouds and uncertainties from titles and from other legal relations, when a useful purpose is thereby served and the issue is finally settled."

We make these citations as showing the purpose and spirit of the act as understood by the learned gentlemen who studied carefully and thoroughly the subject and advocated its uniform adoption throughout the states. We think application of the statute should be rather freely given. It will be far better for the people if courts will be more liberal and willing to pass upon questions presented for decision rather than to lean the other way and refuse to decide, provided the petition presents some controversy concerning present existing conditions.

Section 2 of the Act of June 18, 1923, P. L. 840, provides: "Power to Construe, etc.—Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder."

We are of the opinion that the instant case comes within the provisions of the foregoing section. The legal relations of the parties hereto under the Statute of 1927, *supra*, are disputed, and under the Act of 1923, *supra*, any person interested may obtain a declaration of his rights, status or other legal relations thereunder. A mayor who is advised by his lawfully constituted legal adviser and who, therefore, firmly believes that the act does not apply and that it is not his duty or right to certify, stands in a dangerous position if his adviser and he are wrong. Considerable delay may be caused in the various steps of certification and appeal as provided for in the Act of 1927, *supra*, and its supplement, *supra*. Avoidance of delay is within the spirit of the act. It is important to the many municipalities within the Commonwealth to have this controversy decided at an early date. Just now we have a similar case before us raised by another municipality for decision. We do not concur in the view that the prayer is purely for an advisory opinion; it is for more; it is, we think, for the speedy determination of a real controversy as to whether or not these improvement bonds come under the provisions of the said Act of 1927 and its supplement.

The Act of March 31, 1927, P. L. 91, is entitled "An act relating to municipal indebtedness; imposing certain powers and duties upon the Department

of Internal Affairs, and the officers of counties, cities of the third class, in connection with proceedings to incur and increase indebtedness, and the establishing and maintaining of sinking funds; fixing the maximum maturity of refunding bonds, and providing penalties."

Section 2 provides: "It shall be the duty of the Department of Internal Affairs to carefully examine all proceedings had by the several municipalities of this Commonwealth for the incurring or increasing of the indebtedness thereof, and to ascertain whether the proposed debt is within the limitations imposed by the Constitution, and whether such proceedings are in conformity with existing laws."

The Act of May 23, 1889, P. L. 277, is an act regulating the incorporation and government of cities of the third class, and in article xv, section 27, it provides as follows: "In all contracts for improvements, the cost of which is to be paid by assessments upon the property abutting or benefited, the city may enter into an agreement with the contractor that he shall take an assignment of such assessments in payment of the amount due him under the terms of his contract, and in such case the city shall not be otherwise liable under such contract, whether such assessments are collected or not, or the city may issue improvement bonds based solely upon the assessments for any of said local improvements."

· Article IX, section 8, of the Constitution provides as follows: "The debt of any county, city, . . . except as herein provided, . . . shall never exceed seven per centum upon the assessed value of the taxable property therein, . . . or shall any such municipality or district incur any new debt, or increase its indebtedness to an amount exceeding two per centum upon such assessed valuation of property without the consent of the electors thereof at a public election in such manner as shall be provided by law. . . ."

The bonds in the instant case are about to be issued under the Act of 1889, *supra*, which act is still in force: York City *v.* Eyster, 68 Pa. Superior Ct. 104, 113.

That the instant case does not come under the constitutional provision above referred to is well settled.

In the case of Addyston Pipe and Steel Co. *v.* City of Corry, 197 Pa. 41, the Supreme Court, at pages 48 and 49, said: "As to the $9300 to be paid by the city out of the general sewer fund, there is nothing in the case stated to show that the amount was not then in the city treasury or payable and subsequently paid out of the current revenues. This item, therefore, did not increase the city's indebtedness in the prohibited sense. There is no constitutional restriction on municipal expenditure, provided it is paid as it goes. What is prohibited is the incurring of debt. If the city has the money on hand or provides at the time a present means of raising it otherwise than by loan, it may contract for expenditure without restriction. In the Appeal of the City of Erie, 91 Pa. 398, Gordon, J., quoting from Grant *v.* City of Davenport, 36 Iowa, 396, says: 'When a contract made by a municipal corporation pertains to its ordinary expenses and is, together with other like expenses, within the limits of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the incurring of indebtedness within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts.' And he adds: 'If the contracts of municipal corporations do not overreach their current revenues, no objections can lawfully be made to them, however great the indebtedness of such municipalities may be; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created.'

This is quoted with approval by our Brother Dean in Wade *v.* Oakmont Borough, 165 Pa. 479, 488."

In 37 L. R. A. (N. S.) 1072, it is said: "It is well settled that contracts for local improvements, the cost of which is to be borne wholly by the property benefited, form no part of the indebtedness of the municipality within the meaning of the debt limit provisions. Improvement bonds do not constitute indebtedness within the meaning of the Constitution, where the cost is assessed back on the property benefited, and the amounts assessed become a lien on such property, and where it is provided that the proceeds arising from the assessment shall constitute a special fund for the payment of the cost of the improvement and the bonds and certificates, and where it is required that the bonds shall bear the name of the street or alley improved or sewer constructed, and that they shall be payable out of a special fund provided for in the act, since there is no liability against the city, the city authorities being merely an agency for making and collecting the assessment, and the custodian of the fund when the assessments are collected. And street improvement warrants chargeable to, and payable out of, particular funds to be derived from local assessments at least do not create a present indebtedness against the city."

Section 27 of the Act of 1889, *supra*, provides that the cost of improvements shall be paid by assessments on abutting property or property benefited by the improvement, and that the contractor may take the assignment of such assessments in payment of the amount due him or improvement bonds based solely upon the assessments on the abutting and improved property for the improvement. There is no obligation, under the act, imposed upon the municipality to pay for such improvements. The contractor cannot look to the municipality except as an agent to assess, levy and collect from certain property owners for the work he has done; his source of payment is strictly limited to the assessments. The credit of the municipality is in nowise involved and we are unable to see that bonds issued by a municipality for such local improvements as in the instant case are an indebtedness of the municipality. The municipality is made the instrument for the division of the costs of the improvement against the certain property owners, levying the assessment on the properties, filing liens therefor, collecting the assessments of liens and paying the money over to the holder of the security. If the city fails to perform or errs in the performance of its duty thus laid upon it by the act, it is liable for its failure or error: Gable *v.* Altoona, 200 Pa. 15. It then would not be such an indebtedness as is contemplated in the constitutional prohibition nor in the Act of 1927, *supra*. It is rather a penalty for its error or negligence.

In 1 Dillon on Municipal Corporations (5th ed.), 368, the distinguished author says: "In the case of streets, sewers and other local improvements, which are payable from the proceeds of special assessments upon the property benefited thereby, a contract which provides that the contractor shall be paid from such assessments, that he shall have no right of recourse against the municipality or its property, or its general power of taxation, and that the only duty of the municipality shall be to levy, collect and pay over the special assessments, does not create any indebtedness on the part of the municipality within the meaning of the constitutional limitation, although the city is a party to the contract, although the money is payable through its general treasury, and although it issues certificates, warrants or bonds payable out of such special fund for the payment of the cost of the improvement. Under such a contract, no judgment *in personam* against the city for non-payment of the cost is justified, no charge can be enforced against its general assets,

nor can a resort be had to general taxation for the purpose of satisfying the claim. When the rights of the contractor are so limited, there is no debt within the debt-limit provision of the Constitution. These principles receive their natural and logical application where the city acts as the intermediary or instrument by which the improvement is effected, merely arranging for the improvement, contracting for the work and collecting from the parties benefited the amount of the special assessment. It is eminently proper that under such circumstances the recourse of the contractor should be confined to the special assessments, because the private and local interest really dominate the general public interest of the city. But where the improvement is one which affects the welfare of the city at large and is not properly payable from a local assessment, different considerations arise."

Wherefore, we are of the opinion that the motion to dismiss the petition for a declaratory judgment should be dismissed and that no indebtedness as contemplated by the Act of 1927, *supra*, exists in this case.

And now, Sept. 12, 1929, it is hereby ordered, adjudged and decreed that the motion to dismiss the petition for a declaratory judgment is overruled, that no indebtedness as contemplated by the Act of March 31, 1927, P. L. 91, exists in this case, and that the bonds issued by the City of Chester are not required to be submitted to and approved by the Department of Internal Affairs of the Commonwealth.

From Homer L. Kreider, Harrisburg, Pa.